<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| RAFAELA A. CERRATO, : | |
| : | |
| Plaintiff, : | Civil Action No. 08-277 (SRC) |
| : | |
| v. : | **OPINION** |
| : | |
| MICHAEL J. ASTRUE, : | |
| COMMISSIONER OF SOCIAL : | |
| SECURITY, : | |
| : | |
| Defendant. : | |

**<u>Chesler, District Judge</u>**

This matter comes before the Court on the appeal by Plaintiff Rafaela A. Cerrato ("Cerrato"), of the final decision of the Commissioner of Social Security ("Commissioner") determining that she is not eligible for Social Security Disability Benefits or Supplemental Security Income benefits under the Social Security Act (the "Act"). This Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g) and, having considered the submissions of the parties without oral argument, pursuant to L. CIV. R. 9.1(b), finds that the Commissioner's decision is supported by substantial evidence and is hereby **AFFIRMED**.

**I.  BACKGROUND**

The following facts are undisputed. Cerrato was born in 1955. She has worked as a housekeeper, flower arranger, and packager. On April 16, 2004, she filed an application for Social Security Disability Insurance and Supplemental Security Income benefits, alleging disability since March 2, 2001, due to a right foot fracture, degenerative disc disease of the spine,

hypertension, diabetes, and depression.  Plaintiff's claims were denied by the Commissioner initially and on reconsideration.  Pursuant to Plaintiff's request, a hearing was held before Administrative Law Judge Donna A. Krappa (the "ALJ") on July 10, 2006, with a supplemental hearing held on December 15, 2006.  The ALJ denied Plaintiff's claim in an unfavorable decision issued June 19, 2007.  After the Appeals Council denied Plaintiff's request for review of the ALJ's decision, that decision became final as the decision of the Commissioner of Social Security.  On January 15, 2008, Plaintiff filed the instant appeal of the Commissioner's decision.

## II.  DISCUSSION

### A.    Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g).  This Court must affirm the Commissioner's decision if it is "supported by substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Stunkard v. Sec'y of Health and Human Services, 841 F.2d 57, 59 (3d Cir. 1988); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  Substantial evidence "is more than a mere scintilla of evidence but may be less than a preponderance."  McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004).  The reviewing court must consider the totality of the evidence and then determine whether there is substantial evidence to support the Commissioner's decision.  See Taybron v. Harris, 667 F.2d 412, 413 (3d Cir. 1981).

The reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder."  Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir.

1992), cert. denied sub nom. Williams v. Shalala, 507 U.S. 924 (1993) (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984)).  If the ALJ's findings of fact are supported by substantial evidence, this Court is bound by those findings, "even if [it] would have decided the factual inquiry differently." Fargnoli v. Massanari, 247 F.3d 34, 35 (3d Cir. 2001); see also Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

In determining whether there is substantial evidence to support the Commissioner's decision, the reviewing court must consider: "(1) the objective medical facts; (2) the diagnoses and expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified to by the claimant and corroborated by family and neighbors; (4) the claimant's educational background, work history and present age." Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1973).  "The presence of evidence in the record that supports a contrary conclusion does not undermine the Commissioner's decision so long as the record provides substantial support for that decision." Sassone v. Comm'r of Soc. Sec., 165 Fed. Appx. 954, 955 (3d Cir. 2006) (citing Blalock, 483 F.2d at 775).

**B.    Standard for Awarding Benefits Under the Act**

The claimant bears the initial burden of establishing his or her disability.  42 U.S.C. § 423(d)(5).  To qualify for DIB or SSI benefits, a claimant must first establish that he is needy and aged, blind, or "disabled."  42 U.S.C. § 1381.  A claimant is deemed "disabled" under the Act if he is unable to "engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); see also Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987).  Disability is

predicated on whether a claimant's impairment is so severe that he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Finally, while subjective complaints of pain are considered, alone, they are not enough to establish disability. 42 U.S.C. § 423(d)(5)(A). To demonstrate that a disability exists, a claimant must present evidence that his or her affliction "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically accepted clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

C.   **The Five-Step Evaluation Process**

Determinations of disability are made by the Commissioner, pursuant to the five-step process outlined in 20 C.F.R. § 404.1520. The claimant bears the burden of proof at steps one through four. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

At the first step of the evaluation process, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity.[1] 20 C.F.R. § 404.1520(b). If a claimant is found to be engaged in such activity, the claimant is not "disabled" and the disability claim will be denied. Id.; Yuckert, 482 U.S. at 141.

At step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. §§ 404.1520(a)(ii), (c). An impairment is severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." Id. In determining whether the claimant has a severe impairment, the age, education, and work experience of the claimant will not be considered. Id. If the claimant is found to have a severe

---

[1] Substantial gainful activity is "work that involves doing significant and productive physical or mental duties; and is done (or intended) for pay or profit." 20 C.F.R. § 404.1510.

impairment, the Commissioner addresses step three of the process.

At step three, the Commissioner compares the medical evidence of the claimant's impairment(s) with the impairments presumed severe enough to preclude any gainful work, listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. See 20 C.F.R. § 404.1594(f)(2). If a claimant's impairment meets or equals one of the listed impairments, he will be found disabled under the Social Security Act. If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to step four.

In Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 119-20, 120 n.2 (3d Cir. 2000), the Third Circuit found that to deny a claim at step three, the ALJ must specify which listings[2] apply and give reasons why those listings are not met or equaled. In Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004), however, the Third Circuit noted that "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather, the function of Burnett is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." (Id.) An ALJ satisfies this standard by "clearly evaluating the available medical evidence in the record and then setting forth that evaluation in an opinion, even where the ALJ did not identify or analyze the most relevant listing." Scatorchia v. Comm'r of Soc. Sec., 137 Fed. Appx. 468, 471 (3d Cir. 2005).

Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform his past relevant work. 20 C.F.R. § 404.1520(e). If the claimant is able to perform his past relevant work, he will not be found disabled under the Act. In Burnett, the Third Circuit set forth the analysis at step four:

---

[2] Hereinafter, "listing" refers to the list of severe impairments as found in 20 C.F.R. Part 404, Subpart P, Appendix 1.

> In step four, the ALJ must determine whether a claimant's residual functional capacity enables her to perform her past relevant work. This step involves three substeps: (1) the ALJ must make specific findings of fact as to the claimant's residual functional capacity; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the residual functional capacity to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

Burnett, 220 F.3d at 120.  If the claimant is unable to resume his past work, and his condition is deemed "severe," yet not listed, the evaluation moves to the final step.

At the fifth step, the burden of production shifts to the Commissioner, who must demonstrate that there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with his medical impairments, age, education, past work experience, and residual functional capacity.  20 C.F.R. §§ 404.1512(g), 404.1560(c)(1).  If the ALJ finds a significant number of jobs that claimant can perform, the claimant will not be found disabled.  Id.

When the claimant has only exertional limitations, the Commissioner may utilize the Medical-Vocational Guidelines found in 20 C.F.R. Part 404, Subpart P, Appendix 2 to meet the burden of establishing the existence of jobs in the national economy.  These guidelines dictate a result of "disabled" or "not disabled" according to combinations of factors (age, education level, work history, and residual functional capacity).  These guidelines reflect the administrative notice taken of the numbers of jobs in the national economy that exist for different combinations of these factors.  20 C.F.R. Part 404, Subpart P, Appendix 2, Paragraph 200.00(b).  When a claimant's vocational factors, as determined in the preceding steps of the evaluation, coincide with a combination listed in Appendix 2, the guideline directs a conclusion as to whether an individual is disabled.  20 C.F.R. § 404.1569; Heckler v. Campbell, 461 U.S. 458 (1983).  The

claimant may rebut any finding of fact as to a vocational factor.  20 C.F.R. Part 404, Subpart P, Appendix 2, Paragraph 200.00(b).

Additionally, pursuant to 42 U.S.C. § 423(d)(2)(B), the Commissioner, in the five-step process, "must analyze the cumulative effect of the claimant's impairments in determining whether she is capable of performing work and is not disabled." Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999).  Moreover, "the combined impact of the impairments will be considered throughout the disability determination process." 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. § 1523.  However, the burden still remains on the Plaintiff to prove that the impairments in combination are severe enough to qualify him for benefits.  See Williams v. Barnhart, 87 Fed. Appx. 240, 243 (3d Cir. 2004) (placing responsibility on the claimant to show how a combination-effects analysis would have resulted in a qualifying disability).

While Burnett involved a decision in which the ALJ's explanation of his step three determination was so inadequate as to be beyond meaningful judicial review, the Third Circuit applies its procedural requirements, as well as their interpretation in Jones, to every step of the decision.  See, e.g., Rivera v. Commissioner, 164 Fed. Appx. 260, 262 (3d Cir. 2006).  Thus, at every step, "the ALJ's decision must include sufficient evidence and analysis to allow for meaningful judicial review," but need not "adhere to a particular format." Id.

D.     The ALJ's decision

In brief, the issue before the ALJ on remand was whether Plaintiff was disabled under the Social Security Act beginning March 2, 2001.  The ALJ examined the record and determined that: 1) at step one, Plaintiff had not engaged in substantial gainful activity during the relevant time period; 2) at step two, Plaintiff had impairments including status post right foot fracture, degenerative disc disease of the spine, hypertension, diabetes, and depression, that were "severe"

within the meaning of the Regulations; 3) at step three, Plaintiff's impairment did not meet or equal an impairment in the Listings; 4) at step four, the Plaintiff did not retain the residual functional capacity to perform her past relevant work, but retained the capacity for light work; and 5) at step five, considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that Plaintiff can perform that exist in significant numbers in the national economy. The ALJ concluded that Plaintiff was not under a disability as defined in the Social Security Act.

### E. Plaintiff's Appeal

In the first section of argument in Plaintiff's brief, Plaintiff contends that the ALJ improperly evaluated the medical evidence. In this section, however, Plaintiff by and large simply reviews the medical history and makes vague critiques of the ALJ's opinion. Plaintiff argues, for example, that the ALJ "relied heavily on her own interpretation of the medical evidence over that of the plaintiff's treating physicians." (Pl.'s Br. 19.) Plaintiff fails to follow this up with supporting analysis that ascertains specific errors, within the legal framework of the five-step evaluation process. Plaintiff does not articulate the step at which the ALJ made such alleged errors, nor what erroneous findings resulted, nor what role such findings played in bringing about the ALJ's conclusion. This Court will not fill in the blanks in Plaintiff's arguments.

#### 1. *Arguments about step three*

##### a. Listing 1.04

Plaintiff contends that the ALJ erred in concluding that Plaintiff did not meet the requirements of Listing 1.04A, Disorders of the Spine. Plaintiff's argument, however, consists of quoting Listing 1.04A, followed by a single paragraph which lists a number of technical, clinical

medical findings. (Pl.'s Br. 24.) While this might be meaningful to a medical expert, as legal argument, it fails to demonstrate that the ALJ wrongly evaluated the medical evidence and erred in her determination on this issue. On review, the question for this Court is whether the ALJ's determination that Plaintiff did not meet the requirements of the Listing was supported by substantial evidence. A list composed of technical, medical jargon does not persuade this Court that, as to Listing 1.04A, the ALJ's determination was not supported by substantial evidence.

Moreover, at step three, Plaintiff bears the burden of proof of disability. In regard to Listing 1.04A, Plaintiff's brief offers as evidence only the letter of Dr. Poulad dated August 3, 2006. Even if, for the sake of discussion, this letter presented findings clearly demonstrating that Plaintiff met the requirements of Listing 1.04A, the letter states that Plaintiff reports that the back pain had "dramatically worsened over the past six weeks." (Tr. 468.) Dr. Poulad recommended back surgery, and the record indicates that Plaintiff underwent surgery on August 11, 2006. (Tr. 470-471.) The record shows that, at a post-operative checkup on August 15, 2006, Dr. Poulad recorded that Plaintiff's pain had resolved and that she had not been taking any of the pain medication he had prescribed. (Tr. 472.) These records suggest that Dr. Poulad's findings from August 3, 2006 reflect a medical condition that worsened acutely and was treated quickly and successfully, perhaps all within a two- or three-month period. Under the Act, a period of disability must "last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Plaintiff has not persuaded this Court that the evidence from Dr. Poulad shows that she met the disability requirements for a period of this duration. Plaintiff has not met her burden of showing that she met the requirements of Listing 1.04.

          b.      Listing 12.04

Plaintiff contends that she meets the requirements of Listing 12.04, Affective Disorders.

9

The opening brief, however, merely quotes Listing 12.04, providing no citation to the record or discussion of the evidence that supports finding a disability. This gives this Court no basis to determine that Plaintiff met the requirements of Listing 12.04 or that the ALJ erred.

### 2. *Arguments about steps four and five*

Plaintiff next attacks the ALJ's residual functional capacity determination at step four, since the ALJ's determination at step five relies on and incorporates the step four residual functional capacity determination. At step four, even though the ALJ ruled in Plaintiff's favor, finding that her residual functional capacity did not enable her to perform her past relevant work, the RFC determination is at issue because of its role at step five.

Plaintiff contends that the ALJ erred at step five by failing to incorporate all of Plaintiff's limitations into the hypothetical posed to the vocational expert. The ALJ incorporated into the hypothetical the residual functional capacity determination, established at step four, that Plaintiff retained the capacity for light work activity.

The basic principle which guides the ALJ's construction of the hypothetical is that "the ALJ must accurately convey to the vocational expert all of a claimant's credibly established limitations." Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005). The Third Circuit further explained:

> Limitations that are medically supported and otherwise uncontroverted in the record, but that are not included in the hypothetical question posed to the expert, preclude reliance on the expert's response. Relatedly, the ALJ may not substitute his or her own expertise to refute such record evidence. Limitations that are medically supported but are also contradicted by other evidence in the record may or may not be found credible – the ALJ can choose to credit portions of the existing evidence but 'cannot reject evidence for no reason or for the wrong reason.' Finally, limitations that are asserted by the claimant but that lack objective medical support may possibly be considered nonetheless credible. In that respect the ALJ can reject such a limitation if there is conflicting evidence in the record, but should not reject a claimed symptom that is related to an

>impairment and is consistent with the medical record simply because there is no objective medical evidence to support it.

Id. (citations omitted).

Plaintiff attacks the residual functional capacity determination on two grounds: 1) the ALJ dismissed Dr. Johnson's opinion about her physical limitations; and 2) the ALJ ignored the impact of Plaintiff's mental impairments on her ability to work.

The ALJ did indeed decide to give little weight to Dr. Johnson's opinion, as expressed in the questionnaire the physician completed on June 29, 2006. (Tr. 374-378.) Dr. Johnson stated that Plaintiff could not work, could walk "zero" city blocks without rest or severe pain, was in constant pain, and could not lift or carry any weight. (Id.) The ALJ rejected Dr. Johnson's opinion, finding that it was not supported by her findings or by her progress notes. (Tr. 26.)

The ALJ's decision does not identify the progress notes that she believed did not support Dr. Johnson's opinion.[3] The most extensive progress notes in the record, however, come from the file of University Behavioral Healthcare and cover the period of January 22, 2004 through May 17, 2006. (Tr. 381-430.) Although these are progress notes from psychological and psychiatric treatment, they do record observations of Plaintiff that are relevant to her claims of physical disability. The note of January 26, 2006 states: "REPORTS BEING MORE ACTIVE AT HOME. AND EVEN CONSIDERS GETTING A PART TIME JOB TO HELP PAY FOR COSTS. HOWEVER HER PCP ADVISES AGAINST WORK AT THIS TIME, DUE TO

---

[3] This Court observes that the record shows that Plaintiff appeared and testified before the ALJ at the first hearing, which was held less than two weeks after Johnson's evaluation. While the ALJ's decision does not state any direct observations of Plaintiff from the hearing, this Court queries why, if Plaintiff was indeed in constant pain, as indicated by Dr. Johnson, and unable to walk, neither the ALJ's decision nor Plaintiff's brief makes any mention of her condition, which might have been easily observed during her testimony before the ALJ, noteworthy, and relevant.

SPINAL INJURY." (Tr. 422.) The note of March 7, 2006 states: "WORKS PART TIME AT SISTERS CONVENIENCE STORE IN IRVINGTON AS METHOD FOR DECREASING HER ISOLATION AT HOME." (Tr. 423.) The note of May 8, 2006 states: "SHE RECENTLY HAD A FALL WHILE TAKING A WALK."[4] (Tr. 427.) The last note, dated May 17, 2006, observes increased depression and problems with controlling Plaintiff's diabetes; there is no reference to pain or mobility problems. (Tr. 429.)

Considering the University Behavioral Healthcare notes, Dr. Johnson's evaluation, and the records of Dr. Poulad, this Court concludes that the ALJ's determination that Plaintiff retained the functional capacity for light work is supported by substantial evidence. Although it is not clear from this record exactly why the ALJ decided to give little weight to Dr. Johnson's opinion, any error in that decision would be harmless. The record does provide substantial evidence to support the conclusion that Dr. Johnson's assessment showed, at most, that Plaintiff did experience a brief period of very severe back problems. Dr. Johnson's statement that Plaintiff's impairments have lasted or are expected to last at least twelve months does not appear to be supported by the other evidence of record. The evidence of record shows that the severe functional limitations claimed by Plaintiff existed for a period of two or three months, during June through August of 2006. The record indicates that Plaintiff was, in fact, working in March of 2006, at a time she claims she was unable to work.

In arguing that the ALJ erred at step four, the only medical evidence Plaintiff offers is the Johnson evaluation. As just discussed, the record shows that, even if the ALJ erred in giving

---

[4] Dr. Johnson stated in June that Plaintiff was not able to walk even for one city block. (Tr. 376.) Compare to the May note that states that she fell while taking a walk. (Tr. 427.) This conflict in the evidence can be resolved by concluding that Dr. Johnson was incorrect, or that Dr. Johnson was correct, but that Plaintiff's condition had changed substantially from May to June.

little weight to the Johnson assessment, and even if – for the sake of discussion – the Johnson assessment was an entirely correct assessment of Plaintiff's functioning on June 29, 2006, that condition was treated and resolved within two months.  At step four, Plaintiff bears the burden of proof of disability.  Plaintiff has not met her burden of showing that her residual functional capacity was at a disabling level for a twelve-month period, as required by the Act.  This Court is not persuaded that the ALJ erred in giving little weight to Dr. Johnson's evaluation, but had any such error occurred, it would be harmless and would not have changed the outcome.

      Plaintiff next argues that the ALJ ignored the impact of her mental impairment on her functional capacity.  Plaintiff's brief points to no medical evidence of disabling mental impairments, and this Court has no basis to find that the ALJ erred in not finding that mental impairments limited Plaintiff's residual functional capacity.

      Because this Court finds no error in the residual functional capacity determination at step four, the ALJ did not err by incorporating that determination into the hypothetical at step five.  This Court determines that the ALJ did not improperly construct the hypothetical posed to the expert at step five, and the expert's testimony in response constitutes substantial evidence that there are jobs that Plaintiff can perform that exist in significant numbers in the national economy.  The Commissioner's decision that Plaintiff is not disabled within the meaning of the Act is supported by substantial evidence and will be affirmed.

## III.  CONCLUSION

For the reasons stated above, this Court finds that the Commissioner's decision is supported by substantial evidence and is affirmed.

Dated: January 8, 2008

                 s/ Stanley R. Chesler
               STANLEY R. CHESLER, U.S.D.J.